**UNITED STATES, Appellee,**

v.

**Ervin JOHNSON, Staff Sergeant, U.S. Army, Appellant.**

No. 45,539.

CM 441788.

U.S. Court of Military Appeals.

June 18, 1984.

For Appellant: *Colonel William G. Eckhardt, Lieutenant Colonel R. Rex Brookshire, II, Captain Warren G. Foote, Captain William T. Wilson* (on brief); *Major Robert C. Rhodes.*

For Appellee: *Colonel James Kucera, Lieutenant Colonel John T. Edwards, Captain Thomas E. Booth* (on brief).

*Opinion of the Court*

EVERETT, Chief Judge:

At Fort Jackson, South Carolina, appellant was tried by a general court-martial consisting of members. They convicted him of possessing, transferring, and selling marihuana, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934, and sentenced him to a bad-conduct discharge, forfeiture of all pay and allowances, and reduction to the lowest enlisted grade. Following the convening authority's approval of the findings and sentence, the United States Army Court of Military Review affirmed the findings and sentence. We granted review on this issue:

> WHETHER THE MILITARY JUDGE'S INSTRUCTION ON THE DEFENSE OF ENTRAPMENT ALLOWED THE APPELLANT TO BE CONVICTED IF THE GOVERNMENT REASONABLY SUSPECTED HIM OF CRIMINAL ACTIVITY EVEN IF HE WAS NOT PREDISPOSED TO CRIME.

I

Prior to findings, the defense submitted a requested instruction on entrapment— Appellate Exhibit II—which was derived from § 13.09 of E. Devitt and C. Blackmar, *Federal Jury Practice and Instructions* (3d ed. 1977). When the military judge asked trial counsel for his comments on this request, he replied that "the Government prefers the instruction in the Judge's Guide." *See* para. 6–8, *Military Judge's Guide*, DA Pamphlet 27–9 (1969). Then, individual defense counsel observed that, according to the model military instruction on entrapment, the Government may rebut the defense by showing that it's reasonably suspected [by the police] that the accused was predisposed to commit the charged offense. It is not necessary

to show that he was, in fact, so disposed, and I think that there is some confusion in the way that the book presently has it versus the way that it is now contented [sic] and proposed to have.

He also noted that his requested instruction corresponded to that suggested in a recent article on entrapment. *See* Cain and Gallaway, "A Call for a New Entrapment Instruction: Banishing the 'Reasonable Suspicion' Interloper," 13 *The Advocate* 148, 160 (1981).

Subsequently, the judge asked if the Government objected to the instruction suggested in the article, and trial counsel had no objection aside from a change in one word.

Thereupon, the judge announced:

Let me just state a[t] this time as the instruction is proposed in Appellate Exhibit II, I will not give that instruction as it is there. I will consider if the defense desires giving the instruction as it is in The Advocate under the proposed instruction[1] or in the alternative depending upon what the Government states. I will consider giving the instruction as it is in the bench book with the statement, "However, even if the accused did not suggest or initiate the unlawful activity, you may still find that there was no entrapment if the Government agent had reasonable ground to believe or suspect that the accused was about to be involved in similar criminal conduct" *and* "by a showing that the accused had a predisposition or inclination to commit the offense" as opposed to making that disjunctive, making it conjunctive.

(Emphasis added).

The judge elucidated on this as follows:

In other words, based upon The Advocate, and the article appears to point out a court could believe that mere suspicion on the part of the Government agent is

enough without there having been a predisposition, but put ....

\*    \*    \*    \*    \*    \*

But putting an "and" in there that would take away that particular theory and make it be a requirement that in those cases where they have a reasonable belief or suspicion they can go ahead if the accused has a predisposition or a [sic] inclination. I point this out to the defense as well to consider these two alternatives of how I will give the instruction, so why don't you discuss amongst yourselves because that's what I'll do, one or the other, and I'll see what you prefer. In other words, I would make this conjunctive as opposed to disjunctive as it is in the bench book, or we could do it as it is in The Advocate.

The individual defense counsel replied that "naturally we would like to have it read as we proposed, but of the choices that you have given us, we would prefer the one out of The Advocate."

Despite this defense preference, the judge later stated, "I am going to give the entrapment in the conjunctive as I indicated but from the bench book." When asked by the defense to state "a reason" for his decision, the judge explained:

I feel that in my mind at this time that based upon our current law I find that this instruction with the conjunctive given as opposed to disjunctive more clearly states it. It doesn't deal specifically with what we have before us, and I feel there's a less chance of prejudice or error by my giving the instruction as I've indicated over your objection.

Ultimately, the judge gave a very detailed instruction on entrapment, wherein he recapitulated the evidence that tended to prove or disapprove this defense. In the course of his instruction, he advised the members:

Now, the defense of entrapment does not exist if the original suggestion or initia-

---

1. The requested instruction corresponded substantially to the instruction suggested in the article in *The Advocate*—which itself obviously had been based on the model in Devitt and

Blackmar. Thus, it is unclear what point the judge sought to make by rejecting the requested instruction but being willing to give the instruction proposed in the article.

tive to commit an offense came from the accused. However, even if the accused did not suggest or initiate unlawful activity, you may still find they [sic] there was no entrapment if the Government agents had reasonable ground to believe or suspect that the accused was involved or was about to be involved in similiar [sic] criminal conduct *and* by a showing that the accused had a predisposition or inclination to commit the offenses that are charged.

(Emphasis added.)

At issue before us is whether this instruction was erroneous and prejudiced appellant.

## II

■ Recently, we stated in *United States v. Vanzandt*, 14 M.J. 332, 344 (C.M.A. 1982), that

the subjective test of entrapment involves balancing the accused's resistance to temptation against the amount of government inducement. The focus is on the accused's latent predisposition to commit the crime, which is triggered by the government inducement. The existence of reasonable suspicion by the police is immaterial, so there is no occasion to offer or receive evidence establishing whether or why any reasonable suspicion existed. Indeed, frequently the information which establishes reasonable suspicion is hearsay in nature and its consideration by court members, even under limiting instructions, may be prejudicial to the accused.

(Footnote omitted.) *Accord United States v. Gonzalez-Dominicci*, 14 M.J. 426 (C.M. A.1983). Therefore, court members should not be advised that entrapment may be negated if government agents reasonably believed that the accused was involved in criminal activity. *United States v. Zickefoose*, 17 M.J. 449, (C.M.A.1984). "Reasonable suspicion" on the part of the Government has no part to play in determining whether entrapment exists.

■ However, here we perceive no harm to appellant by reason of the judge's error. His use of the conjunction "and" in his instructions actually imposed an unwarranted burden on the Government in disproving entrapment. The judge required the Government not only to establish appellant's predisposition to commit the crime, but also to prove that law enforcement agents "had reasonable ground to believe" that appellant was predisposed. Instead, only the predisposition is material—whether or not suspected by the police.

The defense argues that in the judge's instructions the word "and" should be read as "or"—as disjunctive, rather than conjunctive. Under this reading, the Government would be free to disprove entrapment either (a) by showing that the accused was predisposed, or (b) by showing that law enforcement agents reasonably believed him to be predisposed. However, after reading the questioned language in context and considering the rest of the rather lengthy entrapment instruction given by the military judge, we perceive no reason to doubt that the court members gave the instructions the meaning that it would have under ordinary rules of grammar—a meaning which would not prejudice appellant.

## III

Accordingly, the decision of the United States Army Court of Military Review is affirmed.

Judge FLETCHER and Senior Judge COOK concur.